IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Eric Alan Sanders, | ) | C/A No. 1:14-3509-JMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER AND** |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Wal-Mart Supercenter of Aiken, SC | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Eric Alan Sanders, filed this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., alleging discrimination due to his disability by Wal-Mart Supercenter of Aiken, SC ("Wal-Mart"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 65.) Sanders filed a response in opposition (ECF No. 75) and the defendant replied (ECF No. 77). The following motions are also before the court: (1) Sanders's motion for judgment alleging the crime of barratry (ECF No. 53), to which the defendant responded (ECF No. 55);[1] (2) the defendant's motion to strike Sanders's response in opposition (ECF No. 76), to which Sanders responded (ECF No. 80) and the defendant replied (ECF

---

[1] As argued by the defendant, Sanders's motion for judgment alleging the crime of barratry is defective because "[b]arratry is a state law criminal offense which relates to repeated or persistent acts of litigation initiated by the accused" and the defendant did not initiate this lawsuit. (ECF No. 55 at 1.)

Page 1 of 17



No. 82)²; and (3) Sanders's motions to compel discovery and supplement his memorandum in opposition (ECF No. 81), to which the defendant responded (ECF No. 83).³

Having reviewed the parties' submissions and the applicable law, the court grants the defendant's motion to strike Sanders's response in opposition (ECF No. 76). The court further finds that the defendant's motion to for summary judgment (ECF No. 65) should be granted and Sanders's motion for judgment alleging the crime of barratry, motion to compel discovery, and motion to supplement his memorandum in opposition (ECF Nos. 53, 81) should be terminated as moot.

## BACKGROUND

The following facts are either undisputed or taken in the light most favorable to Sanders to the extent they find support in the record. (See generally Compl., ECF No. 1.) Sanders was hired by Wal-Mart on September 2, 2011 to work as an hourly associate and was assigned to the position of stocker at the Wal-Mart Supercenter in Aiken, South Carolina. (Id. ¶¶ 1-3, ECF No. 1 at 4.) In March 2012, he was promoted the position of Overnight Support Manager. (Id. ¶ 54, ECF No. 1

---

² As argued by the defendant in its reply brief (ECF No. 77 at 1), Sanders's response exceeds the thirty-five page limitation imposed under Local Civil Rule 7.05 (D.S.C.). Sanders's response in opposition is 165 pages long and he did not obtain leave of court to exceed the page limitation. (ECF No. 75.) Thus, the defendant's motion to strike Sanders's response in opposition (ECF No. 76) is granted. However, the court notes that consideration of Sanders's response beyond the thirty-five page limit would not change the court's analysis or recommendation.

³ Sanders's motion to compel discovery and supplement his memorandum in opposition concerns records that were not released to him by the EEOC under the Freedom of Information Act. (ECF No. 81 at 1.) However, as discussed below, the court finds Sanders's charge with the EEOC to be timely filed and the records in question do not impact the court's analysis of the merits of his case. Thus, Sanders's motion to compel discovery and supplement his memorandum in opposition with the EEOC's complete file should be terminated as moot.



at 7.) Sanders alleges that on March 31, 2012,[4] his first day in his new position, his direct supervisor and Overnight Assistant Store Manager Angelia Ethridge had a conversation with Sanders in which she repeatedly said to him that he needed to "get [his] mind right" and to "calm down." (Id. ¶ 56.) Sanders states that he found Ethridge's comments to be insensitive, painful, and discriminatory because he has suffered from a number of mental conditions since the age of twelve. (Id. ¶¶ 58-59.) He also alleges that Ethridge's comments to him were threatening when viewed through the hip hop culture, as "telling someone to get their mind right was a threat and was often [preceded] by an expletive." (Id. ¶ 60.)

Sanders also details an incident that occurred on April 2, 2012, in which Sanders found Ethridge and Bill Shiver, Sanders's shift manager, cleaning up carts of trash that had been left in the back room. (Id. ¶ 73, ECF No. 1 at 8.) Sanders alleges that he had intended to take care of the trash himself, but had been delayed by other duties. (Id. ¶ 70.) Sanders alleges that this incident created conflict between him and his supervisors, as Ethridge informed him that she got "coached" for him and Shiver accused him of not "managing [his] small square of authority." (Id. ¶¶ 80, 82.)

Approximately a week later on April 9, 2012, Ethridge attempted to repeatedly page Sanders over his Wal-Mart walkie-talkie as he was assisting another employee, asking him "What are you doing?" and "Do you know what time it is?" (Id. ¶¶ 88, 90-91, ECF No. 1 at 9.) Sanders states that he attempted to respond, but perceived her tone and inflection to be disrespectful to him, so he turned off his walkie-talkie and went to the bathroom stall to cry. (Id. ¶¶ 92-93.) The next day, Sanders met with Store Manager Teresa King and Shift Manager David Guillebeau to discuss the incident

---

[4] Sanders's Complaint contains multiple references to events that occurred in the year 2013. However, based on a review of the record in this matter, it is clear that these events occurred in 2012.



regarding Ethridge from the previous day. (Id. ¶ 101.) The meeting ultimately concluded with Sanders's stepping down from his position as Overnight Support Manager. (Id. ¶ 103.)

On April 14, 2012, Sanders returned to work and Bill Shivers "repeatedly" called Sanders "to come to the manger's office" in a manner that "suggested [Sanders] was simply ignoring or not responding to [Shivers.]" (Id. ¶¶ 109-114, ECF No. 1 at 10.) Sanders took out a recording device to document his conversation with Shivers, who left the room after stating that he didn't know Sanders was "off the clock" prior to calling him to the office. (Id. ¶¶ 115-117.) Sanders told Latoya Johnson, an assistant manager, that he could not complete his shift due to stress levels and a stomach condition triggered by stress. (Id. ¶ 119, see also id. ¶¶ 7, 18, ECF No. 1 at 4-5.) Sanders also inquired about taking a leave of absence, but did not complete and turn in the required paperwork to do so. (Id. ¶ 120.)

Sanders was involuntarily admitted to Aiken Regional Medical Center on April 15, 2012 and remained hospitalized until April 28, 2012. (Id. ¶ 122.) Sanders had limited access to a telephone during his hospitalization, but reported to Wal-Mart on May 1, 2012 and talked with Teresa King and Rodney Atkins, manager of the North Augusta store. (Id. ¶¶ 123-24.) Sanders sought to present medical documentation for his absence and get a work schedule. (Id. ¶ 125.) Sanders revealed to King that he suffered from bi-polar disorder and that he wanted to return to Wal-Mart as an overnight stocker. (Id. ¶¶ 128-29, ECF No. 11.) King advised Sanders that interviews were being conducted to fill his position and Sanders asked if he could transfer to another store. (Id. ¶¶ 130, 134.) King asked Sanders to fill out a personal leave of absence form. (Id. ¶ 135.) Sanders failed to do so. Sanders's employment was terminated on May 11, 2013 for his "failure to return from a medical leave of absence," which Sanders contends "is merely a pretense." (Id. ¶¶ 141-43.) Thus,

Sanders alleges in the Complaint that his employment "was terminated primarily due to [his] disability in violation of the Americans with Disabilities Act of 1990" and seeks monetary damages and restoration of his position. (Id. Compl.'s Demand of the Court, ¶ 1-4.)

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party.



Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory"). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Burden Shifting Framework in Employment Cases**

A plaintiff asserting a claim of unlawful discrimination may proceed through two avenues of proof. First, he may directly prove through direct or circumstantial evidence that a protected characteristic such as a disability was a motivating factor in the decision which adversely affected him. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (*en banc*). Such proof includes "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Id. (quoting Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995)). "[A] plaintiff must demonstrate that a 'protected trait . . . actually played a role in the [] decisionmaking process and had a determinative influence on the outcome.' " Worden v. SunTrust Banks, Inc., 549 F.3d 334, 342 n.7 (4th Cir. 2008) (quoting Hill, 354 F.3d at 286).



Alternatively, when direct proof is lacking, a plaintiff may proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir.1995) (holding that the McDonnell Douglas framework applies to claims brought under the ADA). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is one of production, not persuasion." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks & citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's

affidavit is untrue or that the defendant's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148 (emphasis added). However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.     Defendant's Motion for Summary Judgment**

    **1.     Exhaustion of Administrative Remedies**

The defendant argues as a threshold matter that Sanders's claims are untimely because he did not file his administrative charge with the Equal Employment Opportunity Commission ("EEOC") within the statutory 300-day time limit. See 42 U.S.C. § 12117(a) (indicating that the procedures of the ADA are identical to those provided in Title VII); see also 42 U.S.C. § 2000e-5(e)(1). In response, Sanders argues that the intake questionnaire he completed prior to filing his administrative



charge should satisfy the charge-filing requirement under the statutory provisions. (Pl.'s Resp. Opp'n, ECF No. 75 at 28.)

Before filing suit under the ADA, a plaintiff must exhaust his administrative remedies by bringing a charge with the EEOC. See 42 U.S.C. § 12117(a); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). The statute does not explicitly define the term "charge," see Edelman v. Lynchburg College, 535 U.S. 106 (2002), but does set forth certain guidance about the exhaustion process. See 42 U.S.C. § 2000e-5(b), -5(e)(1). In South Carolina, the charge must be filed within 300 days after an "alleged unlawful employment practice" occurred. 42 U.S.C. § 2000e-5(c), (e); 42 U.S.C. § 12117(a); Jones v. Calvert Group, Ltd., 551 F.3d 297 (4th Cir. 2009). "[The timely filing of a charge] is mandatory: a violation not made the subject of a timely charge is 'the legal equivalent of a discriminatory act which occurred before the statute was passed' and is 'merely an unfortunate event in history which has no present legal consequences.' " Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (quoting United Air Lines v. Evans, 431 U.S. 553, 558 (1977)). The failure to file a timely charge with the EEOC bars the claim in federal court. See McCullough v. Branch Banking & Trust Co., 35 F.3d 127, 131 (4th Cir. 1994) ("When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court.").

Under the terms of the statute, a charge must be "in writing under oath or affirmation." 42 U.S.C. § 2000e-5(b); see also 29 C.F.R. § 1601.9 (establishing that a Title VII charge "shall be in writing and signed and shall be verified"). EEOC regulations define "verified" as "sworn to or affirmed before a notary public, designated representative of the [EEOC] or other person duly authorized by law . . . , or supported by an unsworn declaration in writing under penalty of perjury."

PJG

29 C.F.R. § 1601.3. An unverified document that otherwise satisfies the substantive requirements for a charge, see Federal Express Corporation v. Holowecki, 552 U.S. 389 (2008), can be cured by a later-filed charge that is verified, in which instance the verified charge relates back to the filing date of the unsworn charge. See 29 C.F.R. § 1601.12(b); Edelman, 535 U.S. at 118 (finding the EEOC's relation-back regulation to be "an unassailable interpretation" of Title VII).

An intake questionnaire may be deemed a charge if it "reasonably can be construed to request agency action and appropriate relief on the employee's behalf." See Holowecki, 552 U.S. at 404. The Holowecki Court permitted the intake questionnaire to suffice as a charge because the plaintiff in the case had included along with her questionnaire a six-page affidavit detailing the alleged unlawful acts and requesting the EEOC to take action against the employer's alleged discrimination. Id. at 405. Thus, the Holowecki Court found that the intake questionnaire met the requirements of a charge contained in the statute because it contained a "request for the agency to act." Id. Other factors that courts have considered in determining whether an intake questionnaire constitutes a charge include the EEOC's actions in response to the filing. For example, whether the EEOC provides the employer with notice that a charge has been filed and whether a case number is assigned to the filing have been viewed as favorable actions in determining that the intake questionnaire constitutes a charge. Compare Philbin v. Gen. Elec. Capital Auto Lease, Inc., 929 F.2d 321, 323-24 (7th Cir. 1991) (*per curium*) (concluding that the intake questionnaire and signed note that the plaintiff submitted to the EEOC constituted a timely charge, relying in part on the fact that the agency assigned a charge number to the claim and notified the employer) and White v. Mortgage Dynamics, Inc., 528 F. Supp. 2d 576 (D. Md. 2007) (considering the EEOC's treatment of the questionnaire to be relevant in that it issued a charge number and later issued a right to sue letter)

PJG

with Holowecki, 552 U.S. at 417 (noting in its determination that an intake questionnaire did not constitute a charge that the EEOC did not assign a charge number or notify the employer after receiving applicant's documents).

In the instant matter, Sanders's intake questionnaire contains multiple references to an attachment that is not included in the record before the court. (See Intake Questionnaire, ECF No. 65-30 at 10-13.) Sanders argues that he has attempted to obtain his complete file from the EEOC through a Freedom of Information Act request, but that the EEOC's response to his inquiry indicates that his file has been lost. (See EEOC FOIA Response, ECF No. 81-2 at 20-21.) However, the record demonstrates that the EEOC's actions in response to Sanders's intake questionnaire indicate that it treated Sanders's questionnaire as a charge: it assigned Sanders's filing a case number and informed Wal-Mart that a charge of employment discrimination had been filed against it. (See May 7, 2012 Notice of Charge of Discrimination, ECF No. 65-29 at 2; Intake Questionnaire, ECF No. 65-30 at 10-13.) Further, the EEOC provided Sanders with a Form 5 for his signature that contained language stating that "THIS PERFECTS A CHARGE OF DISCRIMINATION TIMELY FILED WITH THE COMMISSION ON APRIL 16, 2012." (See Charge of Discrimination, ECF No. 65-30 at 9.) Accordingly, the defendants have failed to meet their burden to establish that Sanders's charge was untimely filed.

2.    **Discriminatory Termination in Violation of the ADA**

As an initial matter, the court notes that Sanders's Complaint sought damages and injunctive relief based on an alleged termination of his employment by the defendant "primarily due to [Sanders's] disability in violation of the Americans with Disabilities Act of 1990." (Complaint, ECF No. 1 at 11.) Sanders provided as an attachment to his Complaint a signed but undated EEOC



Charge of Discrimination that reflected a sole claim of disability discrimination in violation of the ADA based on Sanders's employment termination. (ECF No. 1-1 at 1.) Thus, while Sanders referenced a hostile work environment in the Complaint, the court notified the parties in its order authorizing the issuance and service of process that "discriminatory discharge by the defendant" in violation of the ADA was the only claim construed as having been raised by Sanders. (Order, ECF No. 22 at 1.) Sanders neither moved for reconsideration of that order, appealed it to the assigned district judge, nor provided any other documentation supporting jurisdiction over a hostile work environment claim. Now, in his response in opposition to the defendant's motion for summary judgment, Sanders alleges that the court "incorrectly denied that it had jurisdiction over a hostile work environment claim." (Pl.'s Resp. Opp'n, ECF No. 75 at 2 n.1.) Sanders's argument in support of this contention relies on a different EEOC Intake Questionnaire provided by the *defendant* in support of its summary judgment motion. That other questionnaire asserts harassment by Sanders's supervisor, Angelia Ethridge. (ECF No. 65-24 at 5.) However, as pointed out above, Sanders did not initially provide sufficient factual allegations to establish the court's jurisdiction over a hostile work environment claim, see Jones, 551 F.3d at 300 (stating that failure of the plaintiff to exhaust administrative remedies concerning an employment discrimination claim deprives the court of subject matter jurisdiction over the claim), and he did not timely dispute the court's construction of the claims presented in his Complaint. See Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999) ("It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction

does, in fact, exist."). Accordingly, Sanders's alleged discriminatory termination is the only claim considered properly before the court and addressed in this Report and Recommendation.[5]

To establish a *prima facie* case of discriminatory termination based upon a disability, a plaintiff must show: (1) that he was a qualified individual with a disability; (2) that he was discharged; (3) that he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) that the circumstances of his discharge raise a reasonable inference of unlawful discrimination. See 42 U.S.C. § 12112(a); see also Reynolds v. Am. Nat. Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (citing Rohan v. Networks Presentations LLC, 375 F.3d 266, 273 n.9 (4th Cir. 2004)); Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696 (4th Cir. 2001). Under the ADA, a "disability" includes:

> (A)  a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B)  a record of such an impairment; or
> (C)  being regarded as having such an impairment.

42 U.S.C. § 12102(1).

In this case, Sanders's termination from employment is undisputed. However, even assuming without deciding that Sanders's condition constituted a disability within the meaning of the statute, see Summers v. Altarum Inst. Corp., 740 F.3d 325, 329-30 (4th Cir. 2014) (finding that the plaintiff "unquestionably alleged a 'disability' under the ADA sufficiently plausible to survive a Rule 12(b)(6) motion"), he cannot establish a *prima facie* case of a discriminatory discharge.

---

[5] Moreover, to the extent Sanders raises additional claims in his response in opposition which were not presented in the Complaint, such claims are not properly before the court. White v. Roche Biomedical Laboratories, Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992) (holding that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment"); see also Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment).



With regard to Sanders's termination, the defendant argues that Sanders was discharged based on his own failure to take the steps necessary to return to work after being released from an involuntary commitment and cannot demonstrate that he was fulfilling the defendant's legitimate expectations at the time of discharge as required by prong three of the *prima facie* test. In analyzing this element to determine satisfactory job performance, a plaintiff's performance is evaluated at the time of the alleged adverse action and courts have recognized that it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (Title VII) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960-61 (4th Cir. 1996)). An employer's expectations of its employees are considered "legitimate" when they are honestly held; whether the employee agrees with those expectations is not the test. Thornley v. Penton Pub., Inc., 104 F.3d 26, 30 (2d Cir. 1997) (stating that "a plaintiff must satisfy the employer's honestly-held expectations"). In this context, the term "legitimate" means that expectations cannot be a "sham designed to hide the employer's discriminatory purpose." Warch, 435 F.3d at 518. As long as the requirements imposed are bona fide expectations, it is not the court's province to determine whether an employer demands too much of its workers. Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997) (Posner, J.).

The undisputed evidence in the record reflects that Sanders was involuntarily committed to the Aiken Regional Medical Center for treatment between April 15, 2012 and April 28, 2012. (Compl. ¶ 122, ECF No. 1 at 10; Pl.'s Dep. 342:15-18, 349:4-5.) After his release, Sanders met with Teresa King on May 1, 2012 who approved Sanders's request to transfer to a different store and



informed Sanders that he must return a leave of absence ("LOA") packet by May 4, 2012 to prevent separation from employment. (LOA Packet, ECF No. 65-16; King Statement, ECF No. 65-21 at 2; Transfer Approval, ECF No. 65-22 at 2.) Sanders's deposition testimony indicates that, despite receiving an LOA packet, having ample opportunity to complete it, and being repeatedly told by King that the packet had to be completed, Sanders failed to complete and return an LOA packet to the defendant. (Pl.'s Dep. 318:8-16, 320:13-17, 327:5-11.) Sanders's employment was considered voluntarily terminated on May 11, 2012. (Exit Interview, ECF No. 65-23 at 2.)

In Sanders's response in opposition to the defendant's motion for summary judgment, he continues to assert that his termination from employment resulted from unlawful discrimination. (Pl.'s Resp. Opp'n, ECF No. 75 at 138.) However, Sanders provides no evidence to show that the defendant did not genuinely believe that Sanders failed to meet the defendant's legitimate expectation of returning his LOA packet at the time of termination, see Holland v. Washington Homes, Incorporated, 487 F.3d 208, 217-18 (4th Cir. 2007); see also Coco, 128 F.3d at 1179, and Sanders's apparent belief that such a failure should not justify termination is insufficient to establish a *prima facie* case. See Evans, 80 F.3d at 960-61 ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff."). Thus, based on the evidence in the record, the court concludes that no reasonable factfinder would determine that the defendant's stated reason for terminating Sanders's employment was pretextual. See Merritt, 601 F.3d at 294 (stating that the plaintiff must demonstrate by the preponderance of the evidence that the proffered reason was "not its true reason [], but [was] a pretext for discrimination") (alteration in original) (internal quotation marks and citation omitted).



**RECOMMENDATION**

Accordingly, the court recommends that the defendant's motion for summary judgment be granted. (ECF No. 65.) The court further recommends that Sanders's motion for judgment alleging the crime of barratry (ECF No. 53), and Sanders's motions to compel discovery and supplement his memorandum in opposition (ECF No. 81) be terminated as moot.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 11, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).