**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | | |
|---|---|---|
| Eric Alan Sanders, | ) | Civil Action No. 1:14-cv-03509-JMC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Wal-Mart Supercenter of Aiken, SC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Eric Alan Sanders ("Sanders" or "Plaintiff") filed this action pro se against his former employer, Defendant Wal-Mart Supercenter of Aiken, SC[1] ("Wal-Mart" or "Defendant"), alleging that he was subjected to discrimination because of his disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101–12213. (ECF No. 1.)

This matter is before the court on (1) Wal-Mart's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (ECF No. 65), (2) Sanders's Motion for Judgment Alleging the Crime of Barratry (ECF No. 53), and (3) Sanders's Motion to Compel Discovery Production and Motion to Supplement Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (ECF No. 81). In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) (D.S.C.), the matter was referred to United States Magistrate Judge Paige J. Gossett for pretrial handling. On December 14, 2015, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant Wal-Mart's Motion for Summary Judgment and terminate as moot Sanders's Motion for Judgment Alleging the Crime of Barratry and Motion to Compel Discovery. (ECF No. 91.) Thereafter, Sanders filed the

---

[1] Wal-Mart asserts that it has been incorrectly identified by Sanders as Wal-Mart Supercenter of Aiken, SC. (ECF No. 32.) Wal-Mart further asserts that it should be identified as Wal-Mart Stores East, LP. (Id.) Therefore, the court **ORDERS** the Clerk to change the caption in the docket to reflect Wal-Mart's proper name.

following documents that the court has construed as comprising the entirety of his Objections to the Magistrate Judge's Report and Recommendation: a Motion to Vacate Order Granting Defendant's Motion to Strike (ECF No. 95); a Motion to Vacate Order Terminating as Moot Plaintiff's Motion for Judgment Alleging the Crime of Barratry (ECF No. 98); a Motion to Vacate Order Terminating as Moot Plaintiff's Motion to Compel (ECF No. 99); a Motion to Vacate (ECF No. 100); and a Supplemental Statement of Disputed Facts and Questions of Law (ECF No. 113).[2] A hearing was held in this matter on March 17, 2016. (ECF No. 127.) For the reasons set forth below, the court **ACCEPTS IN PART AND REJECTS IN PART** the Magistrate Judge's recommendation and **GRANTS** Wal-Mart's Motion for Summary Judgment. The court **DENIES AS MOOT** Sanders's Motion for Judgment Alleging the Crime of Barratry and Motion to Compel.

## I.     RELEVANT BACKGROUND TO PENDING MOTION

The facts of this matter are discussed in the Report and Recommendation. (ECF No. 91.) The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference. The court will only reference herein additional facts viewed in the light most favorable to Sanders that are pertinent to the analysis of his claims.

Sanders is a 33-year-old, African-American man. (ECF No. 65-30 at 10.) Sanders allegedly suffers from numerous mental impairments including bipolar disorder. (ECF No. 65-

---

[2] In addition to these Motions addressing issues in the Report and Recommendation, Sanders also filed a Motion to Vacate Orders Denying Plaintiff's Motion to Appoint Counsel and Terminating as Moot Plaintiff's Motion to Stay (ECF No. 96), a Motion to Vacate Order Denying Plaintiff's Motion to Recuse (ECF No. 97), and a Motion to Vacate (ECF No. 101) a Text Order denying Sanders the opportunity to amend his Complaint.

28 at 27/97:19–100:23.[3])  Wal-Mart is a department store chain in the retail sales industry.

Wal-Mart initially hired Sanders as a meat department associate at a store in Barnwell, South Carolina on April 1, 2003.  (ECF No. 65-28 at 7/20:23–8/21:8.)  Sanders worked at the Barnwell store until November 30, 2007.  (Id. at 8/23:4–25.)  Wal-Mart hired Sanders for a second time on April 23, 2009, as a sales associate at a supercenter store in Augusta, Georgia.  (Id. at 13/44:8–24.)  Sanders voluntarily terminated his sales associate position on June 2, 2009, because he did not have transportation to work.  (Id. at 14/48:1–23.)  On September 2, 2011, Wal-Mart hired Sanders for a third time as a general merchandise stocker at the supercenter store in Aiken, South Carolina.[4]  (ECF No. 65-30 at 9–10.)  Sanders worked as a stocker until March 31, 2012, when he was promoted to the position of overnight support manager.[5]  (ECF No. 65-28 at 45/169:5–7.)

Sanders worked as the overnight support manager until April 10, 2012, when he "stepped down" from the position in hopes of returning to his former position as a stocker.  (ECF No. 65-28 at 52/199:15–200:10 & 69/268:16–21.)  Sanders communicated his resignation to the Aiken

---

[3] The court observes that the docket contains condensed transcripts with 4 pages of testimony on each page.  Therefore, the number before the slash is the ECF page number and the number after the slash is the transcript page number.

[4] As a stocker, "Sanders was responsible for providing customer service; stocking and rotating merchandise; removing damaged or out-of-date goods; setting up, cleaning, and organizing product displays; signing and pricing merchandise; and securing fragile and high shrink merchandise."  (ECF No. 65-1 at 3 (citing ECF No. 65-4 at 2).)  "Sanders was also responsible for handling claims and returns, arranging and organizing merchandise, as well as ensuring the existence of a safe work environment."  (Id. at 3–4 (citing ECF No. 65-4 at 2).)  "Finally, Sanders was responsible for organizing and maintaining the 'back room' of the store by following Wal-Mart's safety, cleaning, and operating procedures."  (Id. at 4 (citing ECF No. 65-4 at 2).)

[5] "Sanders'[s] job duties as an hourly Overnight Support Manager were similar to those of a Stocker, although he also had the responsibilities of supervising Associates by assigning duties; communicating goals; providing feedback and follow-up; monitoring Associate performance; teaching and supporting Company policies and procedures; ensuring policy compliance; and participating in the hiring, promotion, coaching, teaching and evaluation of Associates."  (ECF No. 65-1 at 4 (citing ECF No. 65-11 at 2).)

store manager, Teresa King ("King"), and a shift manager, David Guillebeau ("Guillebeau"). (Id. at 52/199:9–25.)  During his conversation with King and Guillebeau, Sanders revealed he suffered from obsessive compulsive disorder, but did not mention he was also bipolar.  (Id. at 35/131:11–36/133:11.)  King and Guillebeau asked Sanders to keep working through inventory. (Id. at 70/269:8–270:3.)   As a result, Sanders continued to work for Wal-Mart providing overnight support until April 14, 2012.  (Id. at 69/268:22–70/269:11.)

As the overnight support manager, Sanders alleges that he was subjected to harassment and bullying by the following supervisors:  Ingrid Peeples ("Peeples"), overnight assistant store manager; Angelia Ethridge ("Ethridge"), overnight assistant store manager; and Bill Shiver ("Shiver"), shift manager.  (ECF Nos. 1 at 7 ¶ 56–10 ¶ 118 & 65-28 at 25/92:5–9).   The Magistrate Judge summarized these incidents of alleged harassment/bullying as follows:

> Sanders alleges that on March 31, 2012, his first day in his new position, his direct supervisor and Overnight Assistant Store Manager Angelia Ethridge had a conversation with Sanders in which she repeatedly said to him that he needed to "get [his] mind right" and to "calm down." ([ECF No. 1] . . . [at] ¶ 56.)  Sanders states that he found Ethridge's comments to be insensitive, painful, and discriminatory because he has suffered from a number of mental conditions since the age of twelve.  (Id. ¶¶ 58–59.)  He also alleges that Ethridge's comments to him were threatening when viewed through the hip hop culture, as "telling someone to get their mind right was a threat and was often [preceded] by an expletive."  (Id. ¶ 60.)
>
> Sanders also details an incident that occurred on April 2, 2012, in which Sanders found Ethridge and Bill Shiver, Sanders's shift manager, cleaning up carts of trash that had been left in the back room.  (Id. ¶ 73, ECF No. 1 at 8.)  Sanders alleges that he had intended to take care of the trash himself, but had been delayed by other duties.   (Id. ¶ 70.)   Sanders alleges that this incident created conflict between him and his supervisors, as Ethridge informed him that she got "coached" for him and Shiver accused him of not "managing [his] small square of authority."  (Id. ¶¶ 80, 82.)
>
> Approximately a week later on April 9, 2012, Ethridge attempted to repeatedly page Sanders over his Wal-Mart walkie-talkie as he was assisting another employee, asking him "What are you doing?" and "Do you know what time it is?" (Id. ¶¶ 88, 90–91, ECF No. 1 at 9.)  Sanders states that he attempted to respond, but perceived her tone and inflection to be disrespectful to him, so he turned off his walkie-talkie and went to the bathroom stall to cry.  (Id. ¶¶ 92–93.)  The next

day, Sanders met with Store Manager Teresa King and Shift Manager David Guillebeau to discuss the incident regarding Ethridge from the previous day. (Id. ¶ 101.) The meeting ultimately concluded with Sanders's stepping down from his position as Overnight Support Manager. (Id. ¶ 103.)

On April 14, 2012, Sanders returned to work and Bill Shivers "repeatedly" called Sanders "to come to the man[a]ger's office" in a manner that "suggested [Sanders] was simply ignoring or not responding to [Shivers.]" (Id. ¶¶ 109–114, ECF No. 1 at 10.) Sanders took out a recording device to document his conversation with Shivers, who left the room after stating that he didn't know Sanders was "off the clock" prior to calling him to the office. (Id. ¶¶ 115–117.) Sanders told Latoya Johnson, an assistant manager, that he could not complete his shift due to stress levels and a stomach condition triggered by stress. (Id. ¶ 119, see also id. ¶¶ 7, 18, ECF No. 1 at 4–5.) Sanders also inquired about taking a leave of absence, but did not complete and turn in the required paperwork to do so. (Id. ¶ 120.)

(ECF No. 91 at 3–4.)

After suffering through the foregoing, Sanders completed an EEOC Intake Questionnaire on April 13, 2012, in which he provided factual support for his alleged hostile work environment and failure to promote claims and checked boxes for discrimination based on his "Race," "Sex," "Disability" and "Religion." (ECF No. 65-30 at 11 & 13.) On April 14, 2012, Sanders obtained a copy of Wal-Mart's leave of absence ("LOA") packet and even started to fill it out. (ECF No. 65-28 at 79/305:13–25.) Thereafter, on April 15, 2012, Sanders was involuntarily committed to Aiken Regional Medical Center and remained hospitalized until April 28, 2012. (ECF Nos. 1 at 10 ¶ 122, 65-18 at 2–3, 65-19 at 2 & 65-20 at 2.) Wal-Mart also sent Sanders a LOA packet via certified mail on April 17, 2012. (ECF No. 65-15 at 2.)

On May 1, 2012, Sanders returned to the Aiken store and met with King and a visiting store manager, Rodney Baker. (ECF Nos. 1 at 10 ¶ 124 & 65-21 at 2.) At this meeting, Sanders told King that he suffers from bipolar disorder and asked to be allowed to return to his old

position.[6]  (ECF No. 1 at 11 ¶¶ 128–29.)  King advised Sanders that interviews were being conducted to fill his position and Sanders then asked if he could transfer to another store.  (Id. at ¶¶ 130, 134.)  King told Sanders that she would approve his transfer request, but also explained to Sanders that he needed to return a LOA packet to the Aiken store by May 4, 2012, in order to be eligible to return to work.  (ECF No. 65-21 at 2.)  Sanders never returned his LOA packet. (ECF No. 65-28 at 84/327:5–11.)  Wal-Mart terminated Sanders's employment effective May 11, 2012.  (ECF No. 65-23 at 2.)  Wal-Mart's stated reason for terminating Sanders is that "he repeatedly failed to take the steps necessary to return to work upon being released from his involuntary commitment, . . . ."  (ECF No. 65-1 at 22.)  However, in its exit interview documentation, Wal-Mart coded Sanders's termination type as "voluntary" and stated the termination reason as "career opportunities" with the manager adding comments that the "associate decided to pursue other career opportunities."  (ECF No. 65-23 at 2.)

On June 4, 2014, Sanders filed a Charge of Discrimination (the "Charge") with the United States Equal Employment Opportunity Commission.  (ECF No. 65-30 at 9.)  In the Charge, Sanders alleged that he suffered discrimination in violation of the ADA and checked boxes for "Retaliation" and "Disability."  (Id.)  He stated the following particulars:

> I was hired as a General Merchandise Stocker on September 2, 2011.  I was promoted to Overnight Support Manager on March 31, 2012.  On April 9, 2012, I received training for my new position by Assistant Manager, Angelina Etheridge.  During the training, Ms. Etheridge stated to me, "You need to get your mind right, you need to calm down."  Ms. Ethridge repeatedly asked me if I was okay.  On April 10/11, 2012, I informed Teresa King, Store Manager, of my disability.  On April 14, 2012, I requested a 30 day leave of absence.  I spoke with Latoya Johnson, Supervisor.  Ms. Johnson verbally approved my request.  On April 15, 2012, I was hospitalized.  I was released from the hospital on April 30, 2012.  I was terminated on May 12, 2012.
>
> No reason was given for my termination.

---

[6] Sanders admits that this is the first time he had revealed that he suffered from bipolar disorder to Wal-Mart's management at the Aiken store.  (ECF No. 65-28 at 93/363:7–364:15.)

(Id.)

After receiving notice of the right to sue from the EEOC as to the Charge, Sanders filed a pro se Complaint in this court on September 2, 2014, specifically alleging a cause of action for disability discrimination in violation of the ADA based on the termination of his employment (ECF No. 1 at 11 ¶ 1) in addition to referencing claims for discriminatory failure to promote (id. at 6 ¶¶ 37–45), discriminatory assignment of job duties (id. at 7 ¶ 53), and hostile work environment (id. at 7 ¶¶ 56–62, 8 ¶¶ 73–83 & 9 ¶¶ 90–95).   On September 5, 2014, the Magistrate Judge issued an Order and Special Interrogatories requiring Sanders to bring the case into proper form by September 29, 2014.  (ECF No. 6.)  The Magistrate Judge entered a second "proper form" Order on October 6, 2014, giving Sanders until October 30, 2014, to bring the case into proper form.  (ECF No. 15.)  Thereafter, on November 7, 2014, the Magistrate Judge entered an Order construing Sanders as only alleging a claim against Wal-Mart for discriminatory discharge in violation of the ADA.[7]  (ECF No. 22 at 1.)  Sanders did not move for reconsideration of the November 7, 2014 Order or appeal its result.

Wal-Mart answered the Complaint on December 8, 2014, denying its allegations.  (ECF No. 31.)  On June 8, 2015, Sanders filed a Motion for Judgment Alleging the Crime of Barratry (ECF No. 53) to which Wal-Mart responded on June 15, 2015 (ECF No. 55).  On July 9, 2015, Wal-Mart filed its Motion for Summary Judgment.  (ECF No. 65.)  Sanders filed a Memorandum in Support of Denial of Defendant's Motion for Summary Judgment on August 17, 2015, to which Wal-Mart filed Defendant's Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment on August 27, 2015.  (ECF Nos. 75, 77.)  On September 14, 2015, Sanders filed his Motion to Compel Discovery Production (ECF No. 81) to

---

[7] Specifically, the Magistrate Judge found that Sanders failed to include a hostile work environment claim in the Charge and, therefore, he had not exhausted the claim.  (ECF No. 22 at 1 n.1.)

which Wal-Mart responded on September 25, 2015 (ECF No. 83).

The Magistrate Judge issued her Report and Recommendation on December 14, 2015, recommending that the court grant Wal-Mart's Motion for Summary Judgment and deny Sanders's Motions as moot. (ECF No. 91.) Construed as his Objections, Sanders filed 4 Motions to Vacate the Report and Recommendation (ECF Nos. 95, 98, 99 & 100) on January 4, 2016, and a Supplemental Statement of Disputed Facts and Questions of Law (ECF No. 113) on January 21, 2016.[8] Wal-Mart filed Responses to 3 Motions to Vacate on January 22, 2016 (ECF Nos. 106, 107 & 110), and to the remaining Motion to Vacate and the Supplemental Statement on February 5, 2016 (ECF No. 116).

Thereafter, on March 17, 2016, the court heard argument from the parties on the pending Motions. (ECF No. 127.)

## II.   JURISDICTION

This court has jurisdiction over Sanders's ADA claim via 28 U.S.C. § 1331, as the claim arises under a law of the United States, and also via 42 U.S.C. §§ 12117 & 2000e–5(f)(3), which empower district courts to hear claims by "person[s] alleging discrimination on the basis of disability."

## III.   LEGAL STANDARD

A.   The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this

---

[8] The court observes that as objections, Sanders's filings are untimely since objections were due on December 31, 2015. However, because Sanders is a pro se party, the court did consider Sanders's Objections despite their untimeliness. In this regard, if the Motions to Vacate had been construed as motions to alter or amend under Rule 59, they would have been timely. Fed. R. Civ. P. 59(e) ( "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment.").

court.  See Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to - including those portions to which only "general and conclusory" objections have been made - for clear error.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

B.     Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence

supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

## IV.    ANALYSIS

A.    The Report and Recommendation

In the Report and Recommendation, the Magistrate Judge initially addressed Wal-Mart's arguments that Sanders's claims were untimely because he did not file his Charge with the EEOC within the statutory time limit. After reviewing documents relevant to Sanders's interactions with the EEOC, the Magistrate Judge concluded that "the EEOC's actions in response to Sanders's intake questionnaire indicate that it treated Sanders's questionnaire as a charge: it assigned Sanders's filing a case number and informed Wal-Mart that a charge of employment discrimination had been filed against it . . . [and, further] provided Sanders with a Form 5 for his signature that contained language stating that 'THIS PERFECTS A CHARGE OF DISCRIMINATION TIMELY FILED WITH THE COMMISSION ON APRIL 16, 2012.'" (ECF No. 91 at 11 (citing ECF Nos. 65-29 at 2 & 65-30 at 9–13).) Accordingly, the Magistrate Judge determined that Wal-Mart's arguments were without merit regarding the untimeliness of Sanders's administrative complaint. (Id.)

The Magistrate Judge then addressed her perception of what claims were properly before the court. In this regard, the Magistrate Judge observed that even though Sanders's EEOC Intake Questionnaire alleged harassment by Ethridge (ECF No. 65-30 at 13) and Sanders referenced a hostile work environment in the Complaint (ECF No. 1 at 11 ¶ 141), he failed to either "provide sufficient factual allegations to establish the court's jurisdiction over a hostile work environment

claim" or "timely dispute the court's construction of the claims presented in his Complaint." (ECF No. 91 at 12.)    Therefore, the Magistrate Judge found that Sanders's discriminatory discharge because of his disability claim was the only claim in this action.  (Id. at 13.)

Finally, as to the viability of Sanders's cause of action for discriminatory discharge based on his disability, the Magistrate Judge analyzed the claim pursuant to the burden-shifting analysis of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973),[9] and determined that Sanders's prima facie case fails because he cannot establish that he was performing at a level that met Wal-Mart's legitimate expectations.  The Magistrate Judge observed that Wal-Mart's stated reason for terminating Sanders was "his own failure to take the steps necessary to return to work after being released from an involuntary commitment . . . ." (ECF No. 91 at 14.)  The Magistrate Judge further observed that "Teresa King . . . informed Sanders that he must return a leave of absence ("LOA") packet by May 4, 2012 to prevent separation from employment . . . [and Sanders] despite receiving a[] LOA packet, having ample opportunity to complete it, and being repeatedly told by King that the packet had to be completed, . . . Sanders failed to complete and return a[] LOA packet to the defendant."  (Id. at 14–15.)  As a result, the Magistrate Judge concluded that "no reasonable factfinder would determine that the defendant's stated reason for terminating Sanders's employment was pretextual."   (Id. at 15.)  Accordingly, the Magistrate Judge recommended granting Wal-Mart's Motion for Summary Judgment. (Id. at 16.)

---

[9] Pursuant to the burden-shifting framework, once the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the conditions of the plaintiff's employment.  <u>Kasznski v. Thompson</u>, 83 F. App'x 526, 527–28 (4th Cir. 2003).    If the defendant meets the burden to demonstrate a legitimate, non-discriminatory reason for the conditions of the plaintiff's employment, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext."  <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).  Though intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion that the defendant engaged in intentional discrimination remains at all times with the plaintiff.  <u>See</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000).

B.      Sanders's Objections to the Report and Recommendation

Sanders filed pro se 5 separate documents, which this court has construed as Sanders's Objections to the Magistrate Judge's Report and Recommendation.  The court addresses each of these documents below in the order of its filing.[10]

1.      *Motion (ECF No. 95) to Vacate Order (ECF No. 91) Granting Defendant's Motion to Strike (ECF No. 76)*

a.  **Sanders's Arguments**

Sanders objects to the Magistrate Judge striking portions from Sanders's Memorandum in Support of Denial of Defendant's Motion for Summary Judgment (ECF Nos. 75), which occurred because the document was 165 pages long and Sanders had not obtained leave of court to exceed the page limitation.  (ECF No. 91 at 2 n.2.)  Sanders asserts that he was not aware of the page limit and such information was not conveyed by the court in its Roseboro Order (ECF No. 68) or Local Civ. Rule 7.05 (D.S.C.).[11]  (ECF No. 95 at 2.)  He further asserts that he was greatly prejudiced by the Magistrate Judge's decision "because his discussion of his claims under the ADA and why the Defendant is not entitled to summary judgment as a matter of law begins on page 135 of his memorandum."  (Id. at 5.)  Therefore, Sanders "moves the court in good faith to maintain the integrity of his brief and consider allowing the 'fat brief' as a reasonable accommodation . . . ."  (Id.)

b.  **The Court's Review**

Upon review, the court perceives that Sanders's Objection is based on his concern that the Magistrate Judge did not review the entirety of his brief before making her recommendation.

---

[10] Because of the immeasurable number of complaints Sanders has about the Report and Recommendation, the court expressly overrules any Objection not specifically addressed in this Order and Opinion.

[11] The court observes that Local Civ. Rule 7.05(B)(1) (D.S.C.) does express the court's page limitation of 35 pages for "an initial brief of any party."

However, the Magistrate Judge clearly states in the Report and Recommendation that "consideration of Sanders's response beyond the thirty-five page limit would not change the court's analysis or recommendation." (ECF No. 91 at 2 n.2.) Because the Magistrate Judge stands on her recommendation as issued, the matter is appropriately before this court in its current posture. Accordingly, the court overrules Sanders's Objection and declines to vacate the Report and Recommendation on this ground.

> 2. *Motion (ECF No. 98) to Vacate Order (ECF No. 91) Terminating as Moot Plaintiff's Motion for Judgment Alleging the Crime of Barratry (ECF No. 53)*

### a. Sanders's Arguments

Sanders objects to the Magistrate Judge's recommendation to terminate as moot Sanders's Motion for Judgment Alleging the Crime of Barratry. Sanders complains that the Magistrate Judge delayed ruling on his Motion which was filed a month before Wal-Mart's Motion for Summary Judgment. (ECF No. 98 at 2.) Moreover, Sanders asserts that his claim for barratry is appropriate based on Wal-Mart's conduct during discovery (id. at 3–5) and that by terminating his Motion, the Magistrate Judge violated the Judicial Code of Conduct. (Id. at 6 & 8.)

### b. The Court's Review

In his Motion, Sanders attempted to assert a barratry claim in this civil case by citing to S.C. Code Ann. § 16-17-10 (2015), a criminal barratry statute, which states in relevant part:

> Any person who shall: (1) Wilfully solicit or incite another to bring, prosecute or maintain an action, at law or in equity, in any court having jurisdiction within this State and . . . (c) does so with intent to distress or harass any party to such action, . . .; or (2) Wilfully bring, prosecute or maintain an action, at law or in equity, in any court having jurisdiction within this State and . . . (c) brings such action with intent to distress or harass any party thereto . . . Shall be guilty of the crime of barratry.

Id. However, under the common law, "[b]arratry (or barretry) is the offense of frequently exiting

13

and stirring up quarrels and suits between other individuals." <u>Osprey, Inc. v. Cabana Ltd. P'ship</u>, 532 S.E.2d 269, 273 (S.C. 2000).  Assuming without deciding that a civil barratry claim still exists in South Carolina, Sanders never alleged a claim of barratry in his Complaint and never moved to amend his Complaint to add such claim.  Therefore, Sanders's claim for barratry has never been properly before the court.  As a result, Sanders's Objection to the Magistrate Judge's recommendation is without merit.

3.    *Motion (ECF No. 99) to Vacate Order (ECF No. 91) Terminating as Moot Plaintiff's Motion to Compel (ECF No. 81)*

a.  **Sanders's Arguments**

Sanders objects to the recommendation to terminate his Motion to Compel as moot.  In the Motion to Compel, Sanders complained both about the EEOC's response to his request for a copy of his Charge file pursuant to the Freedom of Information Act and Wal-Mart's alleged failure to respond to his discovery requests.  (ECF No. 81 at 1–2 & 6–7.)  In his Motion to Vacate, Sanders reiterates his complaints about the failure of the EEOC and Wal-Mart to appropriately respond to his discovery requests.  (ECF No. 99 at 3–5)  Sanders then argues that the  Magistrate Judge improperly reduced his case to just an ADA claim, failed to provide him with proper guidance, and denied his claim for hostile work environment.  (<u>Id.</u> at 6–9.)  Sanders further argues that he was denied "an opportunity to conduct full, unhindered discovery" and, therefore, the court "denied him due process to prove his allegations by means of direct evidence."  (<u>Id.</u> at 21.)  Sanders requests that the court vacate the Report and Recommendation and allow him to conduct full discovery.  (<u>Id.</u> at 22.)

b.  **The Court's Review**

In the Report and Recommendation, the Magistrate Judge recommended terminating the Motion to Compel as moot because she found "Sanders's charge with the EEOC to be timely

filed and the records in question do not impact the court's analysis of the merits of his case." (ECF No. 91 at 2 n.3.)   In his Objection, Sanders failed to address the Magistrate Judge's reasoning in support of her finding of mootness.   Moreover, Sanders did not address issues regarding the timeliness of his Motion to Compel since it was filed on September 14, 2015, approximately 3 months after discovery closed on June 8, 2015.   Based on the foregoing, the court finds that Sanders's Objection to the Magistrate Judge's recommendation is without merit.

　　　4.　　Motion (ECF No. 100) to Vacate (ECF No. 91)

　　　　　a.  Sanders's Arguments

Sanders objects to the Magistrate Judge's finding that the cause of action for discriminatory discharge is the only claim properly before the court.   (ECF No. 100 at 6.) Sanders argues that he administratively exhausted claims for hostile work environment, failure to promote, and retaliation in violation of the ADA.   (Id.)  Sanders next argues that his submissions regarding Karen Dudley, Bill Shiver, and Teressa King demonstrate that the Magistrate Judge erred in concluding that there was no direct evidence of discrimination.   (Id. at 8–16.)  Sanders further argues that there are genuine disputes of fact to preclude summary judgment regarding (1) Wal-Mart's failure to transfer him to another store, (2) the voluntariness of the termination of his employment, (3) the amount of time he was provided to complete his LOA paperwork, (4) the availability of work after completing the LOA paperwork, (5) Wal-Mart's view on whether he was entitled to a reasonable accommodation, and (6) whether he would have been allowed to work after completing the LOA paperwork.   (Id. at 17–31.)

In support of this argument, Sanders pointed to his deposition testimony as the means of demonstrating the unbelievableness of Wal-Mart's arguments that he "voluntarily terminated his employment by (a) failing to return the required leave of absence paperwork, (b) failing to

coordinate his transfer to a different store location, (c) specifically informing Defendant that he did not intend to return to work at any time in the future, and (d) failing to return to work." (ECF No. 100 at 18–22 (referencing ECF No. 31 at 14–15 ¶ 109.)  More particularly, Sanders asserts that he attempted to find another store to transfer to, but was unsuccessful.  (ECF No. 65-28 at 95/369:8–371:7.)  Sanders asserts that he did not fail to return to work or communicate an intent to never return to work and the only reason he asked for a transfer is that King said that the Aiken store lacked available jobs.  (Id. at 94/366:13–367:2.)  Sanders further asserts that Wal-Mart's stated reason for his discharge (i.e., failure to return LOA paperwork) conflicts with the official reason of "associate decided to pursue other career opportunities" stated in the exit interview documentation.  (ECF No. 100 at 20 (citing ECF No. 65-23 at 2).)  Finally, Sanders asserts that his alleged failure to return the LOA paperwork assumes that he had ample opportunity to complete the paperwork, which assumption is erroneous since he could not work on the LOA packet during the 2 weeks of his involuntary commitment.  (Id. at 21 (referencing ECF No. 65-28 at 81/313:24–314:25).)

In light of the foregoing, Sanders argues that "[t]he evidence of record . . . does not support entry of summary judgment[]" and the Report and Recommendation should be vacated. (Id. at 33.)

### b.  The Court's Review

Before addressing Sanders's exhaustion arguments, the court first considers his assertions regarding the existence of direct evidence of discrimination based on his disability.  "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact . . . without any inferences or presumptions."  O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548 (4th Cir. 1995) (citation omitted).  After careful review of his assertions, the court

finds Sanders's arguments regarding direct evidence unavailing and is not persuaded that the Magistrate Judge erred by analyzing Sanders's discrimination claim in accordance with the burden shifting principles of <u>McDonnell Douglas</u>.

Turning to the substance of Sanders's discriminatory discharge based on his disability claim, the court observes that assuming Sanders's bipolar disorder constitutes a disability within the meaning of the ADA, the facts presented by Sanders do not establish a prima facie ADA claim for the termination of his employment.[12]  Sanders testified that he first informed Wal-Mart's management of his bipolar disorder on May 1, 2012 (ECF No. 65-28 at 93/363:7–364:15), but he never suggested the need for an accommodation for that mental disorder (<u>id.</u> at 98/383:14–384:3).  Sanders testified that even though King told him that he needed to return the LOA documents to the Aiken store by May 4, 2012, Wal-Mart actually gave him until May 11, 2012, without Sanders having made a request for an extension.  (ECF No. 65-28 at 97/380:8–13.)  Sanders further testified that not only did he know he needed to complete the LOA documents (to return to work), but that he had ample time to fill-out the documentation after his involuntary commitment ended.   (<u>Id.</u> at 84/326:13–327:11 & 97/380:1–7.)   Upon consideration of the foregoing, the court finds that even if Sanders's unsuccessful completion and return of the LOA documents did not evidence his failure to meet Wal-Mart's legitimate expectations as determined by the Magistrate Judge (ECF No. 91 at 15), the interaction between Sanders and Wal-Mart as

---

[12] Absent direct evidence, the elements of a prima facie case of discriminatory discharge under the ADA, a plaintiff must demonstrate (1) he was a qualified individual who had a disability; (2) he was terminated; (3) he was fulfilling his employer's legitimate expectations when he was terminated; and (4) the discharge gives rise to a "reasonable inference of unlawful discrimination."  <u>Reynolds v. Am. Nat'l Red Cross</u>, 701 F.3d 143, 150 (4th Cir. 2012).  The employer may then rebut the prima facie case by showing that there was a legitimate non-discriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that those reasons are pretextual.  <u>Wilson v. Carolina Power & Light Co.</u>, C/A No. 4:05-3597-TLW-TER, 2009 WL 2885823, at *7 (D.S.C. Sept. 2, 2009) (citing, <u>e.g.</u>, <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000); <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)).

described above precludes an inference of unlawful discrimination based on a disability.

Moreover, even if Sanders could establish a prima facie case of ADA discriminatory discharge, the court is not persuaded that Sanders's evidence sufficiently demonstrates pretext in that Wal-Mart's stated reason for terminating Sanders's employment was based on his failure to take the steps necessary to return to work by completing required LOA paperwork.[13]  In contrast to Sanders's position that Wal-Mart gave different justifications for his termination, the court finds that Wal-Mart's stated reason is not inconsistent with King's comments on the exit interview form especially when viewed in the context that she was trying to help Sanders transfer to another Wal-Mart store.  (See ECF No. 65-22 at 2.)  Where different, but not inconsistent reasons are offered, a finding of pretext is unwarranted.  See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 217 n.7 (4th Cir. 2007) (no pretext where company told the employee and the court that employee was terminated for threatening to kill someone, but told a state agency that the employee was laid off to allow him to obtain unemployment benefits); Baldwin v. England, 137 F. App'x 561, 564 (4th Cir. 2005) (varying explanations offered by employee's supervisors to explain their refusal to promote her did not constitute pretext where they did not contradict each other, but rather reflected various consistent reasons she could not be promoted); see also Freeman v. N. State Bank, 282 F. App'x 211, 216–18 (4th Cir. 2008) (finding no pretext where employee was given a number of explanations for the monetary

---

[13] "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." Anderson v. Ziehm Imaging, Inc., C/A No. 7:09-02574-JMC, 2011 WL 1374794, at *5 (D.S.C. Apr. 12, 2011) (citing Stewart v. Henderson, 207 F.3d 374, 376 (7th Cir. 2000)).  "The ultimate question is whether the employer intentionally discriminated and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [plaintiff's] proffered reason . . . is correct . . . [i]t is not enough to disbelieve the [employer]." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47 (2000)) (internal citations omitted).  Rather, Hightower must demonstrate that a reasonable jury could "believe [his] explanation of intentional race discrimination." Id.

differences in employee bonuses that varied in depth and detail, but were not materially inconsistent).  To meet his burden of demonstrating pretext, Sanders needed to present significantly probative evidence on the issue to avoid summary judgment.  See Celotex Corp., 477 U.S. at 322–25.  He did not; therefore, the court overrules Sanders's Objection to the Magistrate Judge's recommendation to grant Wal-Mart summary judgment on the claim for discriminatory discharge.

To determine whether the Magistrate Judge correctly concluded that discriminatory discharge was the only claim properly before the court, the court must ascertain whether Sanders exhausted his administrative remedies as to claims for hostile work environment, discriminatory failure to promote, and retaliation.  E.g., Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 593 (4th Cir. 2012) ("Modeled after Title VII . . . , the ADA incorporates that statute's enforcement procedures, . . . , including the requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court, . . . .").  The court addresses each claim as follows.

### 1)  Hostile Work Environment

Upon review of the EEOC's file on Sanders (ECF No. 65-30), the court observes that Sanders clearly implies a hostile work environment in his EEOC Intake Questionnaire (ECF No. 65-30 at 11 & 13), but not in his Charge (id. at 9).  However, to reach the conclusion that Sanders's hostile work environment claim was not exhausted, the Magistrate Judge ignored her own prior finding that "the record demonstrates that the EEOC's actions in response to Sanders's intake questionnaire indicate that it treated Sanders's questionnaire as a charge: . . . ."  (ECF No. 91 at 11.)  As a result, the court does not agree with the Magistrate Judge that Sanders failed to exhaust this claim.  Accordingly, the court sustains Sanders's Objection to the Magistrate

Judge's decision to not allow Sanders to proceed with his claim for hostile work environment.

Without direct evidence, a prima facie case of hostile work environment[14] based on a disability requires the plaintiff to demonstrate: (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer.  Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001).

After careful review of the record, the court finds that even assuming the other elements of the prima facie case are satisfied, Sanders has failed to set forth evidence that he was subjected to unwelcome harassment as a result of his disability and liability for the harassment should be imputed to Wal-Mart.  Sanders testified that May 1, 2012, was the first instance where he revealed that he suffered from bipolar disorder to members of Wal-Mart's management (King and Baker).  (ECF No. 65-28 at 93/363:7–364:15.)  He further testified that he could only think of one co-worker – Demetrius Lucas – who knew about his bipolar disorder and that was because Lucas was in the treatment center at the same time as Sanders.  (Id. at 93/364:22–94/365:19.)  Sanders did not possess any evidence that Lucas had revealed Sanders's bipolar disorder to their co-workers or Wal-Mart's management.  (Id.)  Additionally, Sanders did not produce evidence demonstrating that either his alleged harassers or Wal-Mart's management had notice of his bipolar disorder at the time the alleged harassment occurred.  Therefore, after reviewing the totality of the harassing conduct allegedly committed by certain supervisors at Wal-Mart's Aiken store, the court finds that Sanders's evidence fails to show that actions perpetrated by the

---

[14] A plaintiff can establish a hostile work environment claim under the ADA either by direct evidence, or, as is more common, by relying on the indirect, burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Kasznski v. Thompson, 83 F. App'x 526, 527–28 (4th Cir. 2003).

supervisors occurred because he had a disability.   As a result, the court grants Wal-Mart summary judgment on Sanders's hostile work environment claim on the basis of a disability.

2)  Discriminatory Failure to Promote

As with his hostile work environment claim, Sanders clearly alleges a claim in his EEOC Intake Questionnaire (ECF No. 65-30 at 11) for sex discrimination in a failure to promote context in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17.   For that reason, the court sustains Sanders's Objection to the Magistrate Judge's decision that the failure to promote claim was not properly before the court.

Without direct evidence of discriminatory motive, to prove a prima facie case of failure to promote, the plaintiff must prove by a preponderance of the evidence that: (1) he is within the protected class; (2) he applied for the vacant position in question; (3) he was qualified for that position; and (4) he was rejected under circumstances that give rise to an inference of discrimination." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959–60 (4th Cir. 1996). Upon review, the court finds that this claim fails because the evidence does not clearly establish that there was an allegedly vacant position that Sanders applied for and was rejected for under circumstances that give rise to an inference of discrimination based on sex.   The only allegation relevant to this claim is Sanders's contention that he was denied a position as an inventory supervisor in March 2012 because Wal-Mart "wanted a girl" for the position.  (ECF Nos. 1 at 6 ¶ 44 & 65-30 at 11.)  This allegation alone is not enough to establish a prima facie case of failure to hire under Title VII especially since a male employee was hired to the position in question. (ECF Nos. 1 at 6 ¶ 51 & 65-28 at 45/171:16–172:5.)   Therefore, the court grants summary judgment to Wal-Mart on Sanders's claim for discriminatory failure to hire.

3)  ADA Retaliation

In considering whether Sanders exhausted his ADA retaliation claim, the court observes that Sanders (1) did not check the "Retaliation" box on his EEOC Intake Questionnaire (ECF No. 65-30 at 11), (2) did check the "Retaliation" box on his Charge (id. at 9.), but (3) failed to include any discussion related to retaliation in the narrative portion of either the EEOC Intake Questionnaire or the Charge.  In addition, Sanders did not expressly raise a claim for retaliation in the Complaint.  Based on the foregoing, the court overrules Sanders's Objection regarding the Magistrate Judge's failure to consider the ADA retaliation claim properly before the court.

5.    *Supplemental Statement of Disputed Facts and Questions of Law (ECF No. 113)*

### a.  Sanders's Arguments

In his Supplemental Statement of Disputed Facts and Questions of Law, Sanders opposes Wal-Mart's entitlement to summary judgment by primarily disputing the verity of the allegations in its Answer.  (ECF No. 113 at 2 ¶¶ 1–11, 3 ¶¶ 12–16, 4 ¶¶ 17–19, 5 ¶¶ 20–22, 6 ¶¶ 23–25, 7 ¶¶ 26–32, 8 ¶¶ 33–35, 9 ¶ 36, 10 ¶¶ 37–39, 11 ¶¶ 40–42 & 12 ¶¶ 43–48.)  Sanders then posits 15 questions about reasonable accommodations and leaves of absence that he apparently discovered during a review of the EEOC's Enforcement Guidance: on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act.  (ECF No. 113 at 14–18.)  Sanders then moves the court to vacate the Report and Recommendation.  (Id. at 18.)

### b.  The Court's Review

Upon review of Sanders's Supplemental Statement of Disputed Facts and Questions of Law, the court failed to discern a stated objection to the Magistrate Judge's analysis. Accordingly, the court overrules any objection stated in Sanders's Supplemental Statement of Disputed Facts and Questions of Law.

# V.     CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** the Motion for Summary Judgment of Defendant Wal-Mart Supercenter of Aiken, SC as to Plaintiff Eric Alan Sanders's claims for hostile work environment and discriminatory discharge on account of his disability and discriminatory failure to promote based on sex. (ECF No. 65.) The court **SUSTAINS IN PART** Sanders's Objection to the Magistrate Judge not allowing him to proceed with his claims for hostile work environment and discriminatory failure to promote, otherwise **OVERRULES** all other Objections and **DENIES** the relief requested in his Motions to Vacate (ECF Nos. 95, 98, 99 & 100) and in the Supplemental Statement of Disputed Facts and Questions of Law (ECF No. 113). The court further **DENIES AS MOOT** Sanders's Motion for Judgment Alleging the Crime of Barratry (ECF No. 53), Motion to Compel Discovery (ECF No. 81), Motion to Vacate Orders Denying Plaintiff's Motion to Appoint Counsel and Terminating as Moot Plaintiff's Motion to Stay (ECF No. 96), Motion to Vacate Order Denying Plaintiff's Motion to Recuse (ECF No. 97), and Motion to Vacate (ECF No. 101). The court **ACCEPTS IN PART AND REJECTS IN PART** the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 24, 2016
Columbia, South Carolina